
FILED
2016 Oct-27  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM  MATTHEW HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **CV-2016-** |
| **CITY OF TUSCALOOSA (TUSCALOOSA** | ) | |
| **POLICE DEPARTMENT),** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants** | ) | |

## RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS

COMES NOW, the Plaintiff, WILLIAM MATTHEW HICKS, by and through his counsel of record, and files his Response to the Defendants' Motion to Dismiss.

## STANDARD FOR MOTION TO DISMISS

In deciding a motion to dismiss under 12(b) of the Federal Rules of Civil Procedure, a court must consider the legal sufficiency of the complaint, not the weight of evidence which might be offered at trial. Sawinski v. Bill Currie Ford, Inc., 866 F. Supp. 1383 (M.D. Fla 1994)(citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L. Ed.2d 80 (1957)).  All well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be

taken as true. <u>Jackson v. Okaloosa County, Fla.</u>, 21 F. 3d 1531, 1534 (11th Cir. 1994). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief".  Rule 8 does not require that a plaintiff specifically plead every element of a cause of action. <u>Gentry v. Carnival Corp</u>.  2011 U.S. Dist. Lexis 114841 at 9 (citing <u>Roe v. Aware Woman Ctr. For Choice, Inc</u>., 253 F.3d 678, 683 (11th Cir. 2001)).  The complaint must only contain "**inferential allegations from which [the court] can identify each of the material elements** necessary to sustain recovery under some viable legal theory.  <u>Gentry</u>, 2011 US. Dist. Lexis 114841 at 9 (citing <u>Roe</u>, 253 F. 3d at 684).  **Specific facts are not necessary; the statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests**". <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) (emphasis added). In <u>Twombly</u>, the Supreme Court distinguished "plausible" claims from allegations that were merely "conceivable", and stated that the Court **"[did] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"**. <u>Twombly</u>, 550 U.S. at 570 (emphasis added).  The Supreme Court explained that a complaint, "does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level. <u>Twombly</u>, 550 U.S. at 555. Under the plausibility standard announced by the Supreme Court in <u>Twombly</u>, the facts

2

pled in the complaint must "**raise a reasonable expectation that discovery will reveal evidence corroborating the plaintiff's claim**". <u>Twombly</u>, 550 U.S. at 556 (emphasis added).  The Court in <u>Twombly</u> took their analyses further, by stating a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is remote and unlikely. <u>Twombly</u>, 550 U.S. at 556.

"Dismissal is a harsh penalty that should only be imposed in extreme circumstances…" <u>Sawinski v. Bill Currie Ford, Inc.</u>, 866 F.Supp. 1383 (M.D. Fla. 1994); <u>Lebbos v. Heinrichs</u>, 696 F. Supp. 1279, 1285 (N.D. Cal 1988). "[D]ismissal should only be granted with care in order to avoid improperly denying the plaintiff the opportunity to have [their] claim[s] adjudicated on the merits." <u>Sawinski</u>, 866 F. Supp. 1383 (citing <u>Cohen v. McAllister</u>, 688 F.Supp. 1040, 1043 (W.D.Pa. 1988)).

## <u>ARGUMENT</u>

The Defendants' Motion to Dismiss must be denied. The Defendant argues the Plaintiff's Complaint should be dismissed and states the following grounds:

### I. <u>Introduction</u>

The Defendant's entire Introduction includes alleged "facts" (statements of counsel) that are not plead in the Plaintiff's complaint. A motion to dismiss is not a proper vehicle for the determination of facts outside of the complaint. <u>First Nat</u>.

3

Bank of Fort Walton Beach v. U. S. Fidelity & Guaranty Co., 274 F.Supp. 305, 305 (N.D.Fla.1967)(citing Washington v. Official Court Stenographer, 251 F. Supp 945 (E.D. Pa. 1966). While entertaining, these statements are not evidence and are not to be considered on a motion to dismiss, which only considers the pleading itself and deems all reasonable inferences as true. Jackson v. Okaloosa County, Fla., 21 F. 3d 1531, 1534 (11th Cir. 1994).

Second, the Defendant incorrectly argues the Introduction is appropriate due to the fact the Plaintiff mentions the APOST rules in his complaint, and cites to Butler v. Cleburne County Com'n, 2012 WL 2357740, fn. 11 (N.D.Ala. 2012) to support its position. This footnote cites to other cases that have allowed documents or exhibits which are central to the Plaintiff's claim to be considered on a motion to dismiss without conversion to motion for summary judgment. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)(where a contract was considered pursuant to a breach of contract claim), Horsley v. Feldt, 304 F.3d 1125 (11th Cir. 2002)(where a newspaper article was considered on libel claim). Here, the APOST rule is not central to the Plaintiff's claims. The Plaintiff is not asserting the Defendant is liable because the Defendant violated APOST. The Plaintiff is asserting the Defendant is liable because is engaged in certain discriminatory conduct. The Defendant's failure to assure the Plaintiff had timely re-qualified wasn't even at issue until November 25, 2015, which was *after* a significant portion of the

discriminatory conduct alleged in the complaint. The Plaintiff Complaint alleges, "[a]ccording to APOST, it is the training department's responsibility to schedule recertification". (Complaint ¶ 35). Unambiguously, APOST Rule 650-X-1-.16 states in pertinent part,

> **Responsibility of Each Law Enforcement Agency**.
> (1)     Each law enforcement agency shall have the responsibility of seeing that all required forms and necessary information are properly submitted to the Commission in a timely manner.
> **(2)     Each law enforcement agency shall have the responsibility of assuring that each of its employees who are law enforcement officers, receive training required by the Code of Alabama, 1975, Title 36-21-40 through Title 36-21-52 or by the rules of the Commission.**

APOST 650-X-1-.16 (emphasis added).

Should the Defendant wish to argue that APOST does not state what it expressly states, then that is a matter of interpretation, i.e. a question of fact to be determined by the jury.  *See* Anthony ASH v. Tyson Foods, Inc., 664 F.3d 883 (11th Cir. 2011)(where an employer's  alleged "neutral" reason for the discriminatory conduct was pretextual is a question for the jury). Therefore, the Defendants' Motion to Dismiss must be denied.

## II. Shot gun pleadings are mortal sin

The Defendant simply argues, in conclusory terms, the Complaint is a shotgun pleading, without explanation or pointing to any portions of the Complaint that are objectionable. The Defendant argues this is a mortal sin. The court in

Weiland discussed shotgun pleadings. Weiland v. Palm Beach County Sherriff's Office, 792 F. 3d 1313 (11th Cir. 2016). The court reasoned the underlying characteristic of a shotgun pleading is that it fails to one degree or another, to give the Defendant adequate notice of the claims against them and the grounds upon which each claim rests. Weiland, 792 F.3d at 1323. It stated, a dismissal under Rule 8(a)(2) and 10(b) is only appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim for relief". Weiland, 792 F.3d at 1325. The court found the district court abused its discretion by dismissing complaint pursuant to 8(a)(2) and 10(b). Weiland, 792 F.3d at 1326.

Here, the Plaintiff takes care to ensure there is no confusion and sets forth facts to make the identification of the claims easier. The Plaintiff succinctly sets each count, then includes facts necessary to support each count. ¶ 98-102, 104-108, 110-115, 117-22. It is not impossible to know which allegations of fact are intended to support which claim for relief. As such, the Defendant's Motion to Dismiss must be denied.

### III.    FMLA -Retaliation

The FMLA protects employees from being discriminated against by their employers for engaging in activity protected by the Act. Strickland v. Water Works & Sewer Bd. Of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001). To state a claim for retaliation, the employee "must demonstrate that his employer

intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. <u>Strickland</u>, 239 F. 3d at 1207.

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination." <u>Kilgore v. Trussville Development, LLC</u> 2016 WL 1138412 (11th Cir. March 24, 2016)(citing <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1088 (11th Cir.2004); *see* <u>Brooks v. Cty. Comm'n of Jefferson Cty., Ala.</u>, 446 F.3d 1160, 1163 (11th Cir.2006).

When evaluating claims of retaliation under the FMLA, absent direct evidence of discrimination, courts apply the burden shifting framework established by the Supreme Court in <u>McDonnell Douglas</u>. <u>Brungart, v. Bellsouth Telecomms</u>., 231 F.3d 791 (11th Cir. 2000). To establish a *prima facie* case of retaliation, Hicks must show that 1) he engaged in statutorily protected conduct, 2) he suffered an adverse employment action, and 3) there is a causal connection between the protected conduct and the adverse employment action. <u>Brungart</u>, 231 F.3d at 798. These elements are discussed below:

**COUNT I-FMLA**

    **1.**     <u>**He engaged in statutorily protected right.**</u>

The Plaintiff specifically alleged he testified in a deposition, and was about to testify in the trial of his wife's case which are both expressly stated protected rights under 29 USC 2615(b)(2) and (3) which states,

> It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—
> \* \* \*
> **(2) has given, or is about to give**, **any information** in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
> **(3) has testified, or is about to testify**, in any inquiry or proceeding relating to any right provided under this subchapter.

### 2.    <u>He suffered an adverse employment action.</u>

An adverse action is an employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his status as an employee. <u>Gupta v. Florida Bd. Of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000). Adverse employment action does not refer only to ultimate employment decisions, such as the decision to discharge an employee. <u>Shannon v. Bellsouth Telecomms, Inc.</u>, 292 F.3d 712, 716 (11th Cir. 2002). Instead, an employer's actions constitute an adverse employment action if they reach "some threshold level".   An employer's actions may be evaluated cumulatively. *See* <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1456 (11th Cir. 1998). Multiple counseling notices coupled with negative evaluations and

temporary employment probation constitute adverse employment action. Leatherwood v. Anna's Linens Co., 384 Fed. Appx. 853 (11th Cir. 2010). Refusal to provide adequate training has been deemed an adverse employment action. Tolbert v. Follett Higher Educ. Group, Inc., 2006 US Dist. Lexis 11770 (M.D.Ala. 2006).

The Plaintiff alleged sufficient facts to support he suffered numerous adverse employment actions: he was not promoted in November 2014, he was not promoted in January 2015, the requirements for promotion were adjusted after applying for another promotion on November 3, 2015, not being contacted by training upon returning from leave, he was disciplined three times for a non-offense, he was constructively discharged, he was stripped of his gear and placed on administrative leave, and he was not allowed to work out his "two weeks" notice. Each of these events singularly and cumulatively rise to the level of adverse employment actions.

The Defendant continues to argue "facts" (statements of counsel) that are not pled in the complaint by claiming he could not carry a weapon and this is an "obvious alternative". The facts of the complaint allege Hicks had more experience, was more qualified, and had no write ups or disciplines at the time he was refused the first two promotions. The Complaint clearly alleges facts sufficient to exclude the alleged "lawful explanation". The facts alleged in the complaint

clearly state the write up was for a non-offense and that APOST rules places the responsibility for recertification on the law enforcement agency, not the officer. The facts of the complaint allege the Plaintiff asked if he should go qualify right away, and his supervisor's told him "no". The facts alleged in the complaint infer the supervisors knew it was a non-offense, knew he was qualified, and knew he could carry a weapon, because they sent him right back to work for a few weeks after discovering he was not re-certified. Surely, his supervisors would not have allowed this to happen if he was not qualified or able to carry a weapon, as argued by the Defendant.

The Defendant claims that Complaint alleges training contacted Hicks. This is false. The Complaint clearly states training never contacted Hicks to reschedule, while it contacted other officers upon their return. Training for Hicks was scheduled each time while he was on leave. These allegations are not "speculation", they are facts sufficient to support the elements of each of the Plaintiff's claims.

The Defendant again argues facts by claiming the Plaintiff has alleged no facts to support the "informal counseling" (which was clearly a disciplinary write up, not an informal counseling) was not motivated by retaliation. This is false. The complaint clearly states the write up was a non-offense. Other officers were contacted immediately upon their return from leave to reschedule certification,

Hicks was scheduled to certify three times when he was on leave, training never contacted him upon his return from leave despite their obligation to do so, when Hicks offered to go shoot right now, he was told "no", all of these events took place in close temporal proximity to pivotal moments of his wife's case, all the department talked about his wife's case, one of his supervisors had a conversation with him about his wife's case. With regard to the grievance, Hicks followed procedure of Human Resources and named Chief Anderson as the recipient of the grievance.

The constructive discharge is discussed below under subsection IV, Count III.

The Plaintiff not only complains of being placed on administrative leave, he complains of being stripped of his gear in a room with a window where all other employees could see, and being escorted out of the building, when there was clearly no basis for placing him on administrative leave other than his questioning about his wife's cade. Due to the fact he had committed no wrongdoing, and there was no investigation of his conduct pending he was clearly retaliated against. He complains other employee who had given two weeks notice were not treated in this fashion. While an employer may not be forced to accept two weeks' notice, many courts have considered the fact that being placed on administrative leave can constitute an adverse employment action. Bowman v. Baltimore City Board of

School Comissioners, 2016 WL 1159259 (D. Maryland 2016), <u>Torres Skair v.</u>
<u>Medco Health Solutions, Inc.</u>, 595 Fed. Appx. 847 (11th Cir. 2014). <u>Entrekin v.</u>
<u>City of Panama City, Fla.</u>, 2010 WL 17097555 (11th Cir. 2010) <u>Gray v. City of</u>
<u>Jacksonville, Fla.</u>, 2012 WL 4786187 (11th Cir. 2012), <u>Clay v. LaFarge North</u>
<u>America</u>, 985 F.Supp.2d 1009 (S.D. Iowa 2013), <u>Foster-Bey v. Potter</u>, 296
F.Supp.2d  195 (D.Conn. 2003); <u>Chavez v. Metropolitan Dist. Com'n</u>, 2004 WL
1393616 (D.Conn. 2004). Here, being placed on administrative leave was clearly
an adverse employment action. There was no reason whatsoever to place the
Plaintiff on administrative leave. The City could have simply accepted the
resignation effective immediately, instead it chose to humiliate and embarrass the
Plaintiff by stripping him down in front of other employees and escorting him out
of the building like a common criminal. These actions were not "petty" and could
prevent an employee from engaging in EEOC protected activity.

The Plaintiff is not required to plead al of the facts, just facts sufficient to
infer each element. <u>Gentry v. Carnival Corp</u>.  2011 U.S. Dist. Lexis 114841 at 9
(citing <u>Roe v. Aware Woman Ctr. For Choice, Inc</u>., 253 F.3d 678, 683 (11th Cir.
2001)).  Clearly, the Plaintiff has alleged sufficient facts to support the fact he
suffered from numerous adverse employment actions.

**3. <u>There is a causal connection between the protected activity and the
adverse employment action.</u>**

One common method of establishing the causal link element with circumstantial evidence is close temporal proximity between the adverse employment action and the protected activity. See Bass v. Board v. County Com'rs Orange County, Fla., 256 F.3d 1095, 1117-1119 (11th Cir. 2001)(deeming the causal connection element satisfied even though the adverse action occurred more than one year after the protected activity, where retaliatory acts commenced shortly after the activity occurred).

The Plaintiff alleged sufficient facts to support causation. Hicks alleges everyone in the department talked about his wife's case regularly, his supervisor discussed the fact he didn't receive a promotion, because he testified in her case, and that "certain people here think you might be disgruntled with the city", other officers were treated differently because they were immediately contacted by training to mutually schedule training upon return from FMLA, and not simply rolled onto the next training list while they were out on leave,  Chief Anderson and Gibbs, who made the decision to place the Plaintiff on administrative leave instead of letting him work out his two weeks' notice, did so only after Hicks asked about the case which was set to go to trial, and Chief Anderson heavily participated in his wife's case. The conversations Hicks had with his supervisors each demonstrate causation. Also, all of the actions alleged took place in close temporal proximity to the original protected activity, and continued to occur in close proximity to pivotal

13

moments in the case. Again, the Plaintiff is not required to plead al of the facts, just facts sufficient to infer each element. <u>Gentry v. Carnival Corp</u>.  2011 U.S. Dist. Lexis 114841 at 9 (citing <u>Roe v. Aware Woman Ctr. For Choice, Inc</u>., 253 F.3d 678, 683 (11th Cir. 2001)).  Clearly, the Plaintiff has alleged sufficient facts to support causation.

## COUNT II  FMLA RETALIATION

**1.  <u>He engaged in statutorily protected right.</u>**

The Plaintiff clearly alleged he engaged in a protected activity. He took FMLA leave for the birth of his baby and for two surgeries. 29 U.S.C. §2612.

2.  **<u>He suffered an adverse employment action.</u>**

The Plaintiff adopts and re-asserts the same arguments as stated under Count I as if fully set out herein.

**3.  <u>There is a causal connection between the protected activity and the adverse employment action.</u>**

He Plaintiff adopts and re-asserts the same arguments as stated under Count 1 as if fully set out herein. Additionally, Hicks alleged facts establishing his supervisors were notified he was on FMLA three times when his certifications came up, there are no policies in place regarding duties placed on officers who are on FMLA when their certification comes up, the only policy shows it is the responsibility of the law enforcement agency to reschedule training, Hicks was not

contacted after his leave to reschedule, he was refused the opportunity to go qualify, and then he was falsely written up and disciplined three times for a non-offense.

Clearly, Hicks has alleged sufficient facts to support the allegations of the complaint.

## IV.   CONSTRUCTIVE DISCHARGE (Count III)

To prove constructive discharge, the employees must demonstrate that their working conditions were so intolerable that a reasonable person in their position would be compelled to resign. Steele v. Offshore Shipbuilding, Inc., 867 F.2d 131 (11th Cir. 1989)(citing Huddleston, 845 F.2d at 905; Wardwell v. School Board, 786 F.2d 1554, 1557 (11th Cir.1986); Bourque v. Powell Electrical Manufacturing Co., 617 F.2d 61, 65 (5th Cir.1980); Young v. Southwestern Savings & Loan Association, 509 F.2d 140, 144 (5th Cir.1975).

Constructive discharge is a fact question subject to the clearly erroneous standard of review. Wardwell, 786 F.2d at 1557 (citing Buckley v. Hospital Corporation of America, 758 F.2d 1525, 1530–31 (11th Cir.1985)).

A normal voluntary resignation is not a "tangible employment action" within the meaning of Ellerth/Faragher. Hyman v. Atlantic Medical Center, 1998 U.S. Dist. LEXIS 3416, at *34, 1998 WL 135249 at *10 (D.N.J. 1998) (unpublished). However, if the employer made working conditions so intolerable that the

employee was "forced" to resign, courts can recognize that a constructive discharge occurred, and that is a tangible employment action. See <u>McCoy v. Macon Water Authority,</u> 966 F. Supp. 1209, 1221 (M.D.Ga. 1997). Something as small as "hurt feelings" can form part of a constructive discharge scenario. <u>Garner v. Wal-Mart Stores</u>, 807 F.2d 1536, 1539 (11th Cir. 1987). The Eleventh Circuit Court of Appeals has quoted these cases and this standard of reasonable conduct with approval in <u>Buckley v. Hospital Corp. of America</u>, 758 F.2d 1525 (11th Cir. 1985). Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast. <u>Garner v. Wal-Mart Stores</u>, 807 F.2d 1536, 1539 (11th Cir. 1987).

The facts alleged are clear that the Plaintiff had no prior disciplines before testifying. He had seniority and qualifications yet he was denied opportunities. He was denied training under the guise of setting it up when he was on leave, there were no policies in place regarding employees on leave when their certification comes up other than it is the training department's responsibility to assure officers are re-certied, then wrongfully written up for a non-offense, he is disciplined three times for said offense. He is disciplined again for filing a grievance. A reasonable employee would feel that the inability to follow protocol and file a grievance when he has so clearly been unlawfully wronged intolerable. Again, the Plaintiff is not required to plead al of the facts, just facts sufficient to infer each element. <u>Gentry</u>

16

v. Carnival Corp.  2011 U.S. Dist. Lexis 114841 at 9 (citing Roe v. Aware Woman Ctr. For Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

The motion to dismiss is due to be denied.

**V. 1983 (Count IV)**

The Plaintiff concedes the claims against Captain Anderson in his official capacity are actually claims against the city. Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 2d 1056, 1060 (11th Cir. 19920.  However, the Plaintiff does not concede any of these claims should be dismissed because they are either claims against the City or claims against Captain Anderson in his individual capacity.

Section 1983 currently reads as follows:

> **Every person who, under color of any statute, ordinance, regulation, custom**, or usage, of any State or Territory or the District of Columbia, subjects or **causes to be subjected, any citizen of the United States** or other person within the jurisdiction thereof **to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law**, suit in equity, or other proper proceeding for redress, …

42 U.S.C. 1983 (emphasis added).

Section 1983 gives federal courts jurisdiction to enforce virtually every federal right, whether **constitutional or statutory**. 29 U.S.C. 1331 and 1343(3); See Also, Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S. Ct. 1905, 1911, 60 L.Ed. 2d 508, 516-517. (1979).  The Plaintiff's complaint

alleges statutory and constitutional claims of FMLA, retaliation, and violations of due process.

Cities are "persons" who can be sued under Section 1983. <u>Monell v. Department of Social Services of City of New York,</u> 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). The Supreme Court also held that the municipality is responsible for the conduct of government officials "whose edicts or acts may fairly be said to represent official policy." <u>Monell v. Department of Social Services of City of New York,</u> 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).  The Eleventh Circuit has generally interpreted this language to hold high ranking officials responsible for actions taken in the absence of any specific law or policy. See e.g. <u>Holloman v. Harland</u>, 370 F.3d 1252, 1291-93 (11th Cir. 2004). The Supreme Court has held a municipality can be held liable for a single decision of a high ranking policymaker. <u>Pembar v. City of Cincinnati</u>, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 453 (1986). The Supreme Court held that cities can be found liable under lack of training theory if the failure demonstrates deliberate indifference and it is affirmatively linked to the constitutional rights violation. <u>City of Canton Ohio v. Harris</u>, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed. 2d 412 (1989).

Government officials may be found personally liable for constitutional violations in certain circumstances, but this liability against the individual does not require proof of policy or custom. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 105

S.Ct. 2427, 95 L.Ed. 2d 791 (1985). In the 11th Circuit, the supervisor is personally liable where he acts with deliberate indifference, or where he personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. Auster Oil & Gas, Inc.v. Stream, 835 F.2d 597, 602 (5th Cir. 1988; Mathews v. Crosby, 480 F.3d 1265, 1270-75 (11th Cir. 2007), cert denied, 128 S.Ct. 865 (U.S. 2008).

To state a claim under 42 U.S.C. § 1983 for denial of procedural due process, an individual must show "the state refuse[d] to provide a process sufficient to remedy the procedural deprivation." Cotton v. Jackson, 216 F.3d 1328, 1330–31 (11th Cir.2000) (quotation omitted). "This rule ... recognizes that the [city] must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate agencies before being subjected to a claim alleging a procedural due process violation." Id. at 1331 (quotation omitted).

The Complaint is very clear and unambiguous that the acts Hicks alleges Anderson should be liable for writing up Hicks for filing a grievance in attempt to procure due process and for placing Hicks on administrative leave without notification of an offense, the opportunity for a hearing, and only after the conversation about his wife's case which was also a violation of due process. Both of these acts were in violation of constitutional law. The remaining claims are

against the City. Hicks does not state in conclusory terms the causation (intent). The facts alleged in the Complaint clearly show the action was taken in direct response to (the same day as) the discussion of Hick's wife case which a close in temporal proximity as you can get. See <u>Bass v. Board v. County Com'rs Orange County, Fla.</u>, 256 F.3d 1095, 1117-1119 (11th Cir. 2001). This in conjunction with the fact that Anderson was a key fact witness in Hick's wife's case, Hicks' was faulted for not filing the grievance in Chief Anderson's office (clearly thay had to check with him to make sure Hicks didn't do that before they wrote him up for it), Hicks was written up for failing to properly file the grievance, and he made the decision to place on Hicks administrative leave, are all circumstantial evidence that he had discriminatory intent. The Defendant claims Hicks could have filed a grievance, however, Hicks did file a grievance, and was written up for filing a grievance. Is the City suggesting he go file a second grievance? This argument makes no sense.

Again, the Plaintiff is not required to plead al of the facts, just facts sufficient to infer each element. <u>Gentry v. Carnival Corp</u>. 2011 U.S. Dist. Lexis 114841 at 9 (citing <u>Roe v. Aware Woman Ctr. For Choice, Inc</u>., 253 F.3d 678, 683 (11th Cir. 2001)).

The motion to dismiss is due to be denied.

Respectfully Submitted,

20

/s/ Patricia A. Gill
Patricia A. Gill

OF COUNSEL
PATRICIA A. GILL, P.C.
PO Box 55304
Birmingham, AL 35255
(205) 307-9555
(205) 930-9809
patriciagill@yahoo.com

/s/ Julie L. Love

OF COUNSEL
JULIE L. LOVE, P.C.
PO Box 20577
Tuscaloosa, AL 35402

## CERTIFICATEOF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished to the Defendant via CMF/EF filing system on this the 27 day of October, 2016, to:

Chris McIlwein
HUBBARD, MCILWEIN & BRAKEFIELD
PO Box 2427
Tuscaloosa, AL 35403

James Woodson
PO Box f2089
Tuscaloosa, AL 35403

/s/Patricia A. Gill
OF COUNSEL

21