

FILED

2017 May-02  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MATTHEW HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 7:16-cv-01507-LSC |
| CITY OF TUSCALOOSA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINON AND ORDER

Before the Court is Plaintiff William Matthew Hicks's ("Hicks" or "Plaintiff") Motion for Leave to File Second Amended Complaint (Doc. 18). Hicks's First Amended Complaint (Doc. 15) contains claims against the City of Tuscaloosa ("Tuscaloosa" or "the City") for retaliation, pregnancy discrimination, and constructive discharge under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and violation of civil rights under 42 U.S.C. § 1983. Hicks's proposed second amended complaint (Doc. 18-1) seeks to add a claim against Chief Steve Anderson ("Anderson") for denial of due process under 42 U.S.C. § 1983. Also before the Court are Defendants' Motion to Dismiss (Doc. 6) and Amended Motion to Dismiss (Doc. 17). For the reasons stated below, Plaintiff's

Motion for Leave to File Second Amended Complaint is due to be denied. Defendant's Motion to Dismiss and Amended Motion to Dismiss are due to be granted in part and denied in part.

## I. Background

Hicks began working for the Tuscaloosa Police Department ("TPD") on September 6, 2006, where he worked in the Housing Unit and on patrol. His wife, Stephanie Hicks ("Stephanie"), also worked for the TPD as an investigator in the West Alabama Narcotics Squad ("WANS"). In August 2012, Stephanie went on leave for twelve weeks after the birth of her first child. When she returned from leave, Stephanie was demoted to patrol, allegedly for taking the full twelve weeks of FMLA leave. She responded by filing suit against Tuscaloosa for violations of the FMLA and the Pregnancy Discrimination Act.

Stephanie's lawsuit was well-known among the TPD police officers, who discussed the case openly. While the lawsuit was pending, Hicks continued to work at TPD. In March 2014, the TPD training department ("training") contacted Hicks to schedule his weapons requalification. However, when training picked a date for requalification, Hicks was already scheduled to attend an approved training program on that date. On September 11, 2014, Hicks was deposed in Stephanie's lawsuit against

TPD. During his deposition, Hicks testified that Stephanie received wrongful write-ups from TPD for violations, and that patrol officers are required to wear bulletproof vests and take breaks that are inadequate for a breastfeeding woman.

In October 2014, while Hicks was on approved FMLA leave for shoulder surgery, training rescheduled his requalification. When he returned, he was placed on light duty, and was not contacted about requalification. In November of 2014, Hicks applied for a Field Training Officer ("FTO") position, but despite his seniority and clean disciplinary record, did not receive the position. Then, in January 2015, Hicks once again took approved FMLA leave for shoulder surgery, during which training rescheduled his requalification. Around this time, Hicks applied for another promotion, seeking a Criminal Investigations Officer ("CIO") position. When he was not given this promotion, Lieutenant Mason ("Mason")—one of Hicks's supervisors—asked Hicks if he felt that Stephanie's lawsuit was hurting his chances of promotion. Further, Mason commented that "there are certain people here that feel you might be disgruntled with the city."

In April 2015, Hicks returned to his full duties, and was not contacted about requalification. Then, in May 2015, Hicks took FMLA leave for the

birth of his second child, during which training scheduled his recertification. Hicks again returned to his full duties in July 2015, but was not contacted by training to schedule his requalification. In October 2015, Stephanie's case was set for trial, and in November 2015, Hicks applied for another FTO position. Hicks applied for the position on November 12, 2015. However, a pre-trial conference in Stephanie's case was held on November 16, 2015, and shortly thereafter, the qualifications for the FTO position were changed.

When Hicks went to turn in a new application on November 25, 2015, Sergeant Castleberry ("Castleberry") notified Captain Palmer ("Palmer") that Hicks had not recertified. However, when Hicks offered to go requalify immediately, Castleberry gave him a December 2, 2015 requalification date. Hicks did not appear for his December 2 date because he was suffering from depression. He rescheduled his requalification for December 5, but when that date arrived, he was called into a meeting with Palmer and Lieutenant Sellers. During this meeting, Hicks was asked to write an interdepartmental memo about his reasons for not complying with previous qualification appointments. Hicks then went to requalify and shot a 92, well above the passing requirement. Despite passing, Hicks was asked to reshoot on December 6, 2015. He

passed again, but was required to undertake remedial training. Further, on December 14, he was written up for defective workmanship.

Hicks responded by filing a grievance on December 22, but on the next day, he was once again written up—this time for failing to follow the proper procedure for filing grievances. Following this write-up, which Hicks felt was unfounded, he resigned, giving two weeks' notice. Upon his resignation, Hicks was informed that Anderson, who knew about Stephanie's lawsuit, wished to place him on administrative leave for two weeks. He was asked to strip out of his uniform and was escorted off the property. Hicks claims that other similarly situated officers, who did not testify against the City in a pending lawsuit, were contacted by training for requalification scheduling as soon as they returned from leave.  After Hicks's termination, Stephanie prevailed in her lawsuit against the City.

## II.   Standards of Review

### a. Amendment of Complaint

A party may amend a pleading "as a matter of course within . . . 21 days after serving it, or  . . .  21 days after service of a responsive pleading." Fed. R. Civ. P. 15. After the time for amending as a matter of course has expired, a party may only amend a pleading "with the opposing party's written consent or the court's leave." *Id.*

When a party files a motion for leave to amend a pleading, "[t]he court should freely give leave when justice so requires." *Id.* Rule 15(a)(2) "contemplates that leave shall be granted unless there is a substantial reason to deny it." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985). Indeed, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### b.  Motion to Dismiss

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to satisfy this standard, the complaint must also include "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotations omitted).

*Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). The Court must construe pleadings broadly and resolve inferences in the nonmoving party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

## III. Discussion

A. Tuscaloosa

    a. FMLA Retaliation

Hicks alleges that Tuscaloosa retaliated against him "when it failed to promote [him], when training failed to contact [him] upon his return from leave, by rescheduling his recertification during times that [he] was out on approved leave, by falsely writing [him] up . . . for non-offenses two times, by refusing [him] due process to hear his grievance, by constructively discharging [him], and by placing [him] on administrative leave when he was constructively discharged from his position."

In order to make out a claim for retaliation under the FMLA, a plaintiff must allege that: "(1) he engaged in statutorily protected conduct; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision." *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). Close temporal proximity can raise an inference of causation, but if this is the only basis of causation, the actions must be very close in time. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In fact, the Eleventh Circuit held that a period of three or four months is too long. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Hicks brings two FMLA retaliation claims based on two kinds of statutorily protected conduct. First, he testified in his wife's case against Tuscaloosa. Second, he took FMLA leave for two surgeries and the birth of a child. Both of these activities are protected under the FMLA. *See* 29 U.S.C. § 2615(b); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

Hicks alleges that Tuscaloosa failed to promote him in retaliation for taking FMLA leave. Failure to promote is an adverse employment action. *Webb-Edwards v. Orange Cnty. Sherriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008). Further, Hicks does allege sufficiently close temporal proximity between his FMLA leave in October 2014 and Tuscaloosa's November 2014 failure to promote him. The Eleventh Circuit has found that a period of seven weeks between the protected activity and the adverse employment action is "sufficiently proximate to create a causal nexus." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Therefore, Hicks's allegations that he took leave in October 2014 and that Tuscaloosa failed to promote him in November 2014 are sufficient to lead to a plausible inference that Tuscaloosa's actions in failing to promote Hicks were retaliatory. Therefore, Tuscaloosa's motion to dismiss is due to be denied as to this claim.

Further, Hicks alleges that he testified in his wife's case on September 11, 2014 and that he applied for a promotion in November 2014. Therefore, the time between the protected activity—giving testimony in an FLSA action—and the adverse employment action—failure to promote—is sufficiently close to establish a prima facie case of retaliation. *Meyer v. Sec'y, U.S. Dep't of Health & Human Servs*, 592 Fed. App'x 786, 793 (11th Cir. 2014) (two months is close enough); *Robinson v. LaFarge N. Am., Inc.*, 240 Fed. App'x 824, 829 (11th Cir. 2007) (two months is close enough); See *Farley*, 197 F.3d at 1337 (seven weeks is close enough). Therefore, Tuscaloosa's motion to dismiss is also due to be denied as to this claim.

b. Constructive Discharge

Hicks further alleges that he was constructively discharged on December 23, 2015. Hicks points to temporal proximity between his protected actions and his constructive discharge and one conversation with a superior as evidence of causation. He alleges that one of his superiors asked him "around January 2015" if he felt that Stephanie's lawsuit was hurting his chances of promotion, and told Hicks that "there are certain people here that feel you might be disgruntled with the city." Hicks does not plead facts that would plausibly lead to an inference of

causation as to his allegations of constructive discharge. The last protected conduct that Hicks alleges occurred in May of 2015, and Hicks was not constructively discharged until seven months later, in December 2015. Therefore, the temporal proximity between the conduct and the employment action is not close enough to establish causation by itself. *See Thomas*, 506 F.3d at 1364. Further, the vague statement by his supervisor in January 2015 is also not enough to lead to a plausible inference of causation. The statement occurred eleven months before Hicks's alleged discharge, and did not relate to the write-ups that Hicks claims led to his resignation. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182-83 (11th Cir. 2010) (vague statements about why employee would not receive position were "wholly generalized and plainly insufficient").

Therefore, Hicks has failed to plead any facts that could lead to the plausible inference that his alleged constructive discharge was caused by his protected activity. Tuscaloosa's motion to dismiss is due to be granted as to Hicks's claim for constructive discharge.

c.  42 U.S.C § 1983

An action may be brought under § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

42 U.S.C § 1983. In his complaint, Hicks alleges that Tuscaloosa violated his procedural due process rights. In order to make out a claim for deprivation of procedural due process under § 1983, a plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally . . . inadequate process." *J.R. v. Hansen*, 803 F.3d 1315, 1320 (11th Cir. 2015). Hicks claims that Tuscaloosa denied him due process by  discriminating against him in "the terms, conditions, and privileges of employment," in the following instances: 1) by not following its own policies and procedures when it failed to promote him; 2) when it did not properly schedule his requalification; 3) when it disciplined him "three times for a non-offense"; 4) when it wrote Hicks up for filing a grievance; 5) when it placed him on administrative leave, asked him to turn in his equipment, and escorted him out of the building; and 6) when it failed to allow him to work after he turned in his two weeks' notice. (Doc. 14 at 16.)

Public employees in Alabama have a constitutionally protected property interest in continued employment. Ala. Code § 11-44B-47; *see Todd v. Kelley*, 783 So. 2d 31, 44 (Ala. Civ. App. 2000); *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 832 (11th Cir. 2000). This property right protects Alabama municipal employees from being "suspended without

pay, demoted, dismissed, or otherwise deprived of any constitutionally protected property interest in [their] job[s]" without due process. Ala. Code § 11-44B-47. Further, municipal employees may also have a liberty interest in continued employment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S., 564, 572 (1972). If Tuscaloosa had "ma[de] any charge against [Hicks] that might seriously damage his standing and associations in his community," his liberty interests would have been implicated. *Id.* at 573. Similarly, a deprivation of liberty would have occurred if the City "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573-74. Hicks does not allege that either one of these circumstances apply to him.

However, he claims that Tuscaloosa violated his procedural due process rights in various instances but fails to allege that Tuscaloosa's conduct violated any established property or liberty rights. First, Hicks states that Tuscaloosa failed to follow its own policy and procedure when it chose not to promote him. He alleges that he applied for—and did not receive—three different positions in the relevant time period. However, "a prospective promotion is not a property or liberty interest protected by the fourteenth amendment." *Wu v. Thomas*, 847 F.2d 1480, 1485 (11th

Cir. 1988). Therefore, Hicks has failed to allege the deprivation of a constitutionally protected right as to Tuscaloosa's failure to promote him.

Next, Hicks claims that he was disciplined three times for not qualifying—which he labels a "non-offense"—by 1) a verbal reprimand, 2) a write-up, and 3) a remedial class. Hicks pleads enough facts to show that Tuscaloosa did not follow its own procedures in one of these instances. He claims that an officer is referred to remedial training only if he fails his qualification twice, and that he was required to do this training despite passing twice, and not failing at all. However, this discipline did not violate his property right in continued employment as granted by the Alabama Code because it did not lead to suspension, demotion, or dismissal. Yet, Hicks claimed that this discipline contributed to his constructive discharge.

However, Hicks has failed to properly allege facts to support a claim for constructive discharge. In order to make out a claim for constructive discharge, a plaintiff must plead facts that tend to show that "an employer deliberately ma[de] an employee's working conditions intolerable and thereby forc[ed] him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (quoting *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997)). Working conditions,

however, must be "so unbearable that a reasonable person in that person's position would be compelled to resign." Id. (quoting *Virgo v. Riviera Beach Ass'n, Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)). It is more difficult to make out a claim for constructive discharge than one for a hostile work environment. *Id*. at 1298-99. Yet, a court may find constructive discharge if "the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." *Id*. at 1299 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

Hicks does not allege that the conditions of his employment were changed in any manner because of the discipline that he was subjected to. He was not demoted, his pay was not decreased, and he was not transferred to a different position. He only alleges that the discipline could prevent him from being promoted in the future. However, this allegation does not amount to a condition "so unbearable that a reasonable person . . . would be compelled to resign." *Id*. at 1298. Therefore, he failed to allege sufficient facts to lead to a plausible inference of constructive discharge. Further, Hicks does not provide any

facts or authority to show that he had any other substantive right in not being disciplined.  Therefore, Hicks has failed to plead that he had any constitutionally protected rights which were violated by these incidents of discipline.

Third, Hicks alleges that he was written up for not following the right procedure when he filed a grievance. However, he does not allege that the department violated any right, policy, or procedure in disciplining him for this filing. Instead, he simply makes a conclusory allegation that the write up was false and for a non-offense. Further, the Tuscaloosa City Ordinances clearly indicates that "the employee shall first present the grievance . . . to the immediate supervisor," or, if the supervisor is the subject of the grievance, he "may submit the grievance . . . to the department head." Tuscaloosa City Ordinances § 19-263 (b). Hicks admits that he filed the grievance at City Hall instead of giving it to his supervisor or department head directly. Therefore, Hicks's allegations amount to a claim that he did not follow Tuscaloosa's policies, and Tuscaloosa disciplined him for it. The Court is not aware of any property or liberty interest that Hicks may have had in not being disciplined for

violating the City's laws and regulations.[1] Further, as explained above, Hicks does not have a constitutionally protected interest in not being disciplined unless such discipline changes the conditions of his employment, which he does not allege occurred here.

Fourth, while Hicks alleged that Tuscaloosa violated his rights by failing to allow him to work for two weeks after his resignation, he does not allege that he had a right to continue to work for those two weeks. The Tuscaloosa City Ordinances state that "employment with the city shall terminate on the effective date of the resignation." Tuscaloosa City Ordinances § 19-266(a). Thus, once Hicks submitted his resignation, his employment had automatically terminated and he had no right to continue to work for the City.

Hicks also claims that Tuscaloosa placed him on administrative leave when he submitted his two weeks' notice, forced him to strip out of his equipment, and escorted him out of the building. However, Hicks does not allege that Tuscaloosa violated any of its policies or procedures in placing him on administrative leave, forcing him to turn over his equipment, and escorting him out of the building. Instead, he simply

---

[1] Hicks does allege that he misfiled this grievance based on advice from Human Resources. However, he does not allege that this filing was proper or that he had a right to rely on this advice.

states that "[o]ther officers who did not testify in a pregnancy discrimination and FMLA case are not placed on administrative leave when they resign." However, as explained above, according to the Tuscaloosa City Ordinances, his employment automatically terminated when he resigned, and therefore, Tuscaloosa did not violate his property rights when it placed him on administrative leave, escorted him out of the building, and required him to turn over his equipment.

Tuscaloosa's actions also did not deprive Hicks of any constitutionally protected liberty interest. Reputational harm or humiliation may constitute a deprivation of liberty only when the harm leads to "the significant alteration or extinguishment of a right or status recognized by state law." *Von Stein v. Brescher*, 904 F.2d 572, 581 (11th Cir. 1990). However, Hicks did not allege that Tuscaloosa's post-resignation actions led to him being deprived of future employment or any other state-recognized right. Therefore, he has not alleged that he was deprived of any constitutionally protected right.

Lastly, Hicks also claims that Tuscaloosa violated his rights when it did not properly schedule his requalification. He claims that according to the Alabama Peace Officers Standards and Training Commission ("APOST"), it is the training department's responsibility to reschedule

certification. Further, the Tuscaloosa City Ordinances state that any officer who does not requalify every year may lose his certification as a police officer. However, Hicks does not allege that he lost his job because of the training department's failure to contact him to schedule his certification. Indeed, he does not claim that he was not scheduled to recertify, but rather, that he was scheduled at times when he was on leave, sick, or otherwise engaged. Further, he also admits that he "forgot" about requalifying because training usually contacted him, and that he made no efforts to schedule a requalification himself. Therefore, Hicks has not alleged any facts that could plausibly lead to the inference that the training department's failure to contact him for requalification resulted in a constitutional deprivation.

While Hicks alleges that he was denied due process of law, he does not properly allege that he was deprived of any constitutionally protected rights. As he did not allege deprivation of a constitutionally protected liberty or property interest, he cannot show that he was denied due process of law in these deprivations. Therefore, his claims under 42 U.S.C § 1983 are due to be dismissed.

   B. Anderson

      a. Official Capacity

Anderson moves to dismiss Hicks's claims against him asserted in his official capacity as Tuscaloosa's chief of police. However, neither Hicks's First Amended Complaint (Doc. 15) nor his Second Amended Complaint (Doc. 18-1) purports to assert claims against Anderson in his official capacity. Therefore, Anderson's motion to dismiss the claims against him in his official capacity is due to be denied as moot.

b. Individual Capacity

Hicks moves to amend his complaint against Anderson to add a claim under § 1983 for violating Hicks's due process rights "when he was written up for filing a grievance, and when he was placed on administrative leave after giving his two weeks' notice." (Doc. 18-1.) Hicks appears to be claiming that he should have been afforded an opportunity to properly file a grievance, a hearing, or another form of due process before he was written up or placed on administrative leave.

In order to make out a claim under § 1983, a plaintiff must show that "[]he was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997). However, as explained above, Hicks cannot show that "he was deprived of a federal right" when he was placed on administrative leave. Therefore, his claim against Chief Anderson, if allowed, would be subject

to dismissal. As such, Plaintiff's motion to amend is due to be denied for futility.[2]

## IV. Conclusion

Plaintiff's motion to amend (Doc. 18) is DENIED as futile. Further, Defendant's motions to dismiss (Docs. 6 and 17) are GRANTED in part and DENIED in part. Plaintiff's claims for constructive discharge and for violation of 42 U.S.C § 1983 are dismissed. All other claims remain.[3]

**DONE** and **ORDERED** this 2nd day of May 2017.

_____
L. Scott Cooler
United States District Judge

186291

---

[2] As Anderson is not a party to this action, the clerk is directed to remove him from the case.

[3] The Court acknowledges that Hicks's pregnancy discrimination claim remains in this action. Defendants were instructed, on April 20, 2017, that if they wished for this claim to be addressed, they were to file an amendment to the motion to dismiss making arguments about the claim. Defendants failed to take advantage of this opportunity, and instead had a secretary direct the Court to documents which did not argue the claim. Therefore, the Court will not address the pregnancy discrimination claim. Defendants are free to assert that the claim is due to be dismissed, if appropriate, at subsequent stages of the litigation.